IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION AT DAYTON

LISA BUCKNER, :

        Plaintiff,

    -vs-

MONTGOMERY COUNTY JOBS
AND FAMILY SERVICES
DIVISION, *et al.,*

        Defendants. :

Case No. 3:11-cv-320

Magistrate Judge Michael R. Merz

# DECISION AND ORDER

This case is before the Court on Motion of Defendants Montgomery County Jobs and Family Services and Board of County Commissioners of Montgomery County, Ohio for Summary Judgment. (Doc. 85). The parties have briefed the issues, (*Id.,* Doc. 90), and the matter is ripe for decision on the merits.

The parties have consented to plenary magistrate judge jurisdiction pursuant to 28 U.S.C. § 626(c), and the matter has been referred on that basis. (Doc. 12, 13).

Plaintiff Lisa Buckner brought this action against her former employer and agency for which she worked, Montgomery County Board of Commissioners ("Board") and Montgomery County Jobs and Family Services Division ("agency"), alleging that they violated her rights under the Americans with Disabilities Act, 42 U.S.C. §§ 12101, *et seq.* ("ADA") as well as under Ohio state law, O.R.C. § 4112.02, *et seq.* (Complaint, Doc. 2). Specifically, Ms. Buckner alleges that she suffered from a major depressive disorder, a bipolar disorder, and, in March, 2009, from third

1

degree burns, that the Board and the agency were aware of her disabilities, and that in spite of her disabilities, she was able to perform the essential functions of her job. *Id.,* PageID 41, 42. Ms. Buckner claims that the Board and the agency violated her rights under the ADA and the Ohio handicap discrimination laws when they improperly scheduled her for a fitness-for-duty examination, and when they failed to return her to work on June 18, 2008, after they received a psychologist's report. *Id.*, PageID 43, 44. The Board and the agency both deny that any employment decisions they made and actions they took with respect to Ms. Buckner violated either the ADA or state law. (Doc. 4, 5).

Ms. Buckner is acting *pro se* and courts liberally construe filings by *pro se* litigants. *Owens v. Keeling,* 461 F.3d 763, 776 (6th Cir. 2006)(citations omitted); see also, *Evans v. Vinson,* 427 Fed.Appx. 437. 445 (6th Cir. 2011)(citations omitted); *Matson v. Montgomery County Jail Medical Staff Personnel,* 832 F.Supp. 846, 849 (S.D. Ohio 2011).

Summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine dispute[1] as to any material fact and the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56. On a motion for summary judgment, the movant has the burden of showing that there exists no genuine [dispute] of material fact, and the evidence, together with all inferences that can reasonably be drawn therefrom, must be read in the light most favorable to the party opposing the motion. *Adickes v. S.H. Kress & Co.,* 398 U.S. 144, 157-59 (1970). Nevertheless, the mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly

---

[1] The word "dispute" was substituted for "issue" in Fed. R. Civ. P. 56 as of December 1, 2010. The amendment, according to its drafters, did not change the summary judgment standard.

supported motion for summary judgment; the requirement is that there be no *genuine* [dispute] of *material* fact.  *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 247-48 (1986) (emphasis in original).  Summary judgment procedure is properly regarded not as a disfavored procedural shortcut, but rather as an integral part of the Federal Rules as a whole, which are designed to "secure the just, speedy and inexpensive determination of every action."  *Celotex Corp. v. Catrett,* 477 U.S. 317, 327 (1986).

Read together, *Liberty Lobby* and *Celotex* stand for the proposition that a party may move for summary judgment asserting that the opposing party will not be able to produce sufficient evidence at trial to withstand a Rule 50 motion for judgment as a matter of law.  *See, Street v. J.C. Bradford & Co.,* 886 F.2d 1472, 1478 (6th Cir. 1989).  If, after sufficient time for discovery, the opposing party is unable to demonstrate that he or she can do so under the *Liberty Lobby* criteria, summary judgment is appropriate.  *Id.*  The opposing party must "do more than simply show that there is some metaphysical doubt as to the material facts."  *Matsushita Electric Industrial Co., Ltd. v. Zenith Radio Corp.,* 475 U.S. 574, 586 (1986).

The moving party

> [A]lways bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any," which it believes demonstrate the absence of a genuine [dispute] of material fact.

*Celotex,* 477 U.S. at 323;  *see also, Boretti v. Wiscomb,* 930 F.2d 1150, 1156 (6th Cir. 1991) (citation omitted).  In ruling on a motion for summary judgment (in other words, determining whether there is a genuine [dispute] of material fact), "[a] district court is not ... obligated to wade through and search the entire record for some specific facts that might support the nonmoving

3

party's claim." *Interroyal Corp. v. Sponseller,* 889 F.2d 108, 111 (6th Cir. 1989), *cert. denied,* 494 U.S. 1091 (1990). Thus, in determining whether a genuine dispute of material fact exists on a particular issue, a court is entitled to rely only upon those portions of the verified pleadings, depositions, answers to interrogatories, and admissions on file, together with any affidavits submitted, specifically called to its attention by the parties.

With these principles in mind, the facts of this case at this stage of the litigation and construed in the light most favorable to Ms. Buckner are as follows.

The Board is the appointing authority for the agency. Complaint, PageID 40. Ms. Buckner, who has suffered with major depressive disorder and bipolar disorder since she was fourteen years of age, began working for the agency on March 13, 1995. *Id.,* PageID 41; Affidavit of Lisa Buckner, Nov. 29, 2012, ("Buckner Aff."), Doc. 90, PageID 2005. At the time of the events which led to this action, Ms. Buckner's position with the agency was Economic Support Specialist, she was a member of the American Federation of State, County, and Municipal Employees union, and Judy Richard was her immediate supervisor. Affidavit of Marcell N. Dezarn, Nov. 1, 2012, ("Dezarn Aff."), Doc. 85, Attachment 1 thereto, PageID 1872[2]; Affidavit of Judy Richard, Nov. 1, 2012, ("Richard Aff."), Doc. 85, Attachment 2 thereto PageID1945[3]; Buckner Aff., PageID 2005. Ms. Buckner's job duties included determining overpayments based on referrals that the Child Care Unit sent; calculating claims and sending notices to customers regarding their overpayment; attending State Hearings to present cases in front of hearing officers if a customer did not agree with the agency decision; updating the Child Care database; sending notices to the worker of record in the Child Care Unit to suspend a Child Care case if the customer failed to repay the

---

[2] Mr. Dezarn is the Human Resources Manager for the agency. Dezarn Aff., PageID 1871.
[3] At all times relevant to the current action, Ms. Richard was Ms. Buckner's immediate supervisor

4

overpayment pursuant to agreement; when there was compliance with an "overpayment agreement, sending notices to the Child Care unit to release any sanction previously imposed; tracking employment requests and ensuring a referral was completed within thirty days of receipt of the request; and assisting with covering the front customer service desk. Dezarn Aff., and Ex. 1 attached thereto, PageID 1872; 1875-76; Richard Aff., PageID 1945.

On February 8, 2008, after Ms. Buckner had received a "does not meet requirements" annual evaluation for 2007, Ms. Richard placed Ms. Buckner on a sixty-day Performance Improvement Plan ("PIP"). Dezarn Aff., PageID 1872 and Ex. 2 thereto, PageID 1877-80; Richard Aff., PageID 1946 and Ex. 1 thereto, PageID 1949-52. The PIP provided that Ms. Buckner was to complete all of her assignments in a timely and accurate manner, organize her work area, become current with the employment verifications, and correctly complete all child care overpayments. *Id.*

On March 18, 2008, while at home and preparing a meal, Ms. Buckner sustained a serious burn injury to her right leg and foot. Complaint, PageID 41. Ms. Buckner received treatment in the emergency room for her burn injury on the same date she sustained the injury. *Id.* In spite of sustaining the injury, Ms. Buckner returned to work the next day. *Id.*

During the time the PIP was in place, Ms. Richard had weekly meetings with Ms. Buckner to review her progress. Richard Aff., PageID 1946. Also during the time the PIP was in place, Ms. Buckner was tardy on at least one occasion and she took leave and FMLA leave for her son's illness as well as for her own medical needs. *Id.* Ms. Buckner was not disciplined during the time the PIP was in place. *Id.*

During March and April, 2008, Ms. Richard had received complaints from clients and co-workers about Ms. Buckner's behaviors and therefore began to become concerned about Ms.

5

Buckner's ability to perform her job duties. *Id.* Ms. Richard observed that Ms. Buckner was argumentative with co-workers as well as clients. *Id.* On one occasion when Ms. Richard observed Ms. Buckner looking for a file, she heard Ms. Buckner state, "It must be all the medication I'm on." *Id.*, PageID 1947. In addition, over time, Ms. Richard observed that Ms. Buckner came to work dressed in a sweat suit, wore headphones with music playing loud enough that she (Ms. Richard) could hear it, and brought her juvenile son to work with her in violation of agency policy. *Id.* Further, Ms. Richard observed that the burn on Ms. Buckner's leg did not seem to be improving. *Id.*

Based on Mr. Richard's concerns and observations, on April 11, 2008, the agency placed Ms. Buckner on paid administrative leave and scheduled her for a fitness-for-duty examination. Dezarn Aff., PageID 1872 and Ex. 6 thereto, PageID 1897. Specifically, by letter dated April 18, 2008, the agency notified Ms. Buckner that

> We have become increasingly concerned about your ability to perform the position of Economic Support Specialist in a safe, effective, and professional manner. We are also concerned about your attendance, excessive use of leave and, most recently, an incident which occurred in the office April 9, 2008. We understand that you have voluntarily made comments to your supervisor concerning the impact your medication is having on your overall well being.
> …

*Id.*; Buckner Aff., Ex. attached thereto, PageID 2034. The agency also advised Ms. Buckner that it had scheduled her for a fitness-for-duty medical examination on April 24, 2008, at MedWork Occupational Healthcare. *Id.*; Dezarn Aff., PageID 1872 and Ex. 6 thereto, PageID 1897.

Ms. Buckner had undergone surgery on April 14, 2008, for treatment of her burn injury and was unable to attend the fitness-for-duty examination scheduled for April 24, 2008. Complaint,

6

PageID 43; Dezarn Aff., Ex. 6 thereto, PageID 1897. The agency rescheduled the examination and on May 16, 2008, Dr. Steven Gamm of MedWork examined Ms. Buckner. Complaint, PageID 43; Dezarn Aff., PageID 1872, and Exs. 6 and 7 thereto, PageID 1898, 2899-1901. The agency scheduled Ms. Buckner for a second fitness-for-duty examination and on May 23 and 26, 2008, Ms. Buckner attended that fitness-for-duty examination which MedWork psychologist Dr. Sacks performed. Complaint, PageID 44; Dezarn Aff., PageID 1873, and Ex. 8 thereto, PageID 1902-14.

On June 17, 2008, Ms. Buckner attended a meeting with representatives from the agency and from her union. Complaint, PageID 45. At that meeting, Brenda Thomas, Defendants' labor relations manager, advised Ms. Buckner that she would not be returned to work and that as of June 23, 2008, her paid administrative leave status would be terminated. *Id.* Mr. Dezarn notified Ms. Buckner by way of letter dated June 18, 2008, that based on Dr. Sack's report, the agency could not return her to work. Buckner Aff., Ex. attached thereto, PageID 2031; Dezarn Aff., PageID 1873, and Ex. 9 thereto, PageID 1915. Mr. Dezarn also advised Ms. Buckner that until she provided a medical release returning her to full duty, effective the close of business on June 23, 2008, her administrative leave would be terminated, she could use any of her available leave time to cover her absences, and that once she had exhausted all available leave, the agency would place her on a medical leave of absence without pay. *Id.*; see also, Buckner Aff., Ex. attached thereto, PageID 2028.

On June 26, 2008, Ms. Buckner filed a grievance pursuant to her union contract seeking to have the agency return her to paid administrative leave status until a physician released her to return to work. Complaint, PageID 45; Dezarn Aff., Page 1873, and Ex. 12 thereto, PageID 1926, 1927. On July 24, 2008, Mr. Dezarn denied Ms. Buckner's grievance at the second step of the

7

grievance process. Dezarn Aff., PageID 1873, and Ex. 13 thereto, PageID 1927. During the period of time that Ms. Buckner's grievance was pending, specifically June 27, 2008, she filed a notice of appeal with the State Personnel Board of Review regarding her claims as well as an application for worker's compensation benefits. Complaint, PageID 45. Both of those requests were subsequently denied. *Id.*

During the time Ms. Buckner was on leave, she sought and received approval to participate in the agency's leave sharing program. Complaint, PageID 46. Ms. Buckner received from other agency employees one hundred twelve hours of donated leave for which she received compensation. Dezarn Aff., PageID 1873, and Ex. 16 thereto, PageID 1935. Ms. Buckner exhausted her available paid leave on about August 12, 2008. Dezarn Aff., Ex. 14 thereto, PageID 1928.

On about July 18, 2008, Ms. Buckner applied for disability benefits through the Ohio Public Employees Retirement System (PERS). Complaint, PageID 46; Buckner Aff., Ex. attached thereto, PageID 2029; Dezarn Aff., PageID 1874, and Ex. 18 thereto, PageID 1937. On July 28, 2008, Ms. Buckner provided the agency with a note from her physician, Dr. Schear, which stated that she would not return to work. Dezarn Aff., PageID 1874. On October 9, 2008, PERS notified Ms. Buckner that it had approved her application for disability benefits. Dezarn Aff., PageID 1874, and Ex. 19 thereto, PageID 1938. On November 4, 2008, after it received notice of Ms. Buckner's approved disability application, the agency processed her for a disability retirement separation. Dezarn Aff., PageID 1874, and Ex. 20 thereto, PageID 1939. Until the time PERS notified Defendants that it had approved Ms. Buckner's application for disability, Defendants kept Ms. Buckner's job open and unfilled pending her return to work. Dezarn Aff., PageID 1873.

Ms. Buckner filed discrimination charges with the Equal Employment Opportunity Commission ("EEOC") on February 28, 2009, alleging that Defendants had discriminated against her on the basis of, *inter alia*, her disability in violation of the ADA. Complaint, PageID 46. The EEOC notified Ms. Buckner by letter dated September 30, 2010, that there was reasonable cause to believe Defendants had violated the ADA when they required her to undergo medical examinations and then when they refused to allow her to return to work after June 18, 2008. *Id.* and Ex. 2 attached thereto, PageID 62-63; Buckner Aff., PageID 2011-12. Defendants declined to enter into settlement discussions with Ms. Buckner. Complaint, PageID 47. Subsequently, the United States Department of Justice ("DOJ") advised Ms. Buckner by way of letter dated July 8, 2011, that it would not file suit on the charge of ADA discrimination and advised her of her right to sue within ninety days.[4] Complaint, PageID 47, and Ex. 4 attached thereto, PageID 65-66; Buckner Aff., PageID 2012-14. This action followed.

The Court will first address Ms. Buckner's claim that Defendants discriminated against her when they scheduled her for fitness-for-duty examinations.

The ADA protects disabled employees and job applicants from discriminatory treatment. The statute provides that no covered employer "shall discriminate against a qualified individual with a disability because of the disability of such individual in regard to job application procedures, the hiring, advancement, or discharge of employees, employee compensation, job training, and other terms, conditions, and privileges of employment." 42 U.S.C. § 12112(a). An individual is considered "disabled" under the ADA if she (1) "has a physical or mental impairment

---

[4] It appears that the DOJ letter was "resent" to Ms. Buckner on July 8, 2011, and there is no indication of when DOJ originally sent her the letter containing the notice of her right to sue. However, there is no dispute that Ms. Buckner timely filed the present action.

that substantially limits one or more of the major life activities of such individual," (2) "has a record of such impairment," or (3) is regarded by her employer as having such an impairment. *Sullivan v. River Valley Sch. Dist.,* 197 F.3d 804, 810 (6th Cir. 1999); see also, 42 U.S.C. § 12102(2)(A)-(C).

The ADA prohibits employers from requiring a medical examination or making inquiries of an employee as to whether such employee is an individual with a disability unless such examination or inquiry is shown to be job-related and consistent with business necessity. *Kroll v. White Lake Ambulance Authority,* 691 F.3d 809, 815 (6th Cir. 2012)(citation omitted). Thus, employees can be instructed to undergo medical examinations by employers only "in limited circumstances" confined by the "job-relatedness" and "business necessity" requirements. *Id.*, citing *EEOC v. Prevo's Family Mkt., Inc.,* 135 F.3d 1089, 1094 (6th Cir. 1998)("[T]he statute was intended to prevent against 'medical tests and inquiries that do not serve a legitimate business purpose'")(citation omitted). The EEOC has explained that this restriction reflects Congress's intent to protect the rights of applicants and employees to be assessed on merit alone, while protecting the rights of employers to ensure that individuals in the workplace can efficiently perform the essential functions of their jobs. *Kroll,* 691 F.3d at 815 (citation omitted). Health problems that significantly affect an employee's performance of essential job functions justify ordering a physical examination even if the examination might disclose whether the employee is disabled or the extent of any disability. *Sullivan,* 197 F.3d at 812(citation omitted). The same is true for ordering a mental examination when aberrant behavior similarly affects an employee's job performance. *Id.* Pursuant to the ADA, employers are permitted to conduct voluntary medical examinations and make inquiries into the ability of an employee to perform job-related functions.

*Kroll,* 691 F.3d at 815, n.7 (citation omitted).

There is no dispute that Ms. Buckner's job as an Economic Support Specialist with the agency required that Ms. Buckner interact with co-workers as well as with the agency's clients. Ms. Richard has testified that after she placed Ms. Buckner on a PIP, she began to receive complaints from Ms. Buckner's co-workers and the agency's clients about her behaviors. Additionally, Ms. Richard testified that she observed Ms. Buckner being argumentative with co-workers and clients and engaging in unusual behavior such as coming to work dressed in sweat suits, wearing head phones, and bringing her juvenile son to work with her. Finally, Ms. Buckner made a voluntary comment to Ms. Richard about the effect her medication was having on her job performance. Ms. Buckner has not challenged any of Ms. Richard's testimony with admissible Rule 56 evidence. Stated differently, Ms. Buckner has not disputed with evidence that she engaged in the behaviors which Ms. Richard has described.

Based on Ms. Richard's concerns about Ms. Buckner's behaviors, the agency, *inter alia,* placed Ms. Buckner on paid administrative leave and scheduled an initial fitness-for-duty medical examination and, based on the report of that examination, for a subsequent fitness-for-duty examination. Again, Ms. Buckner does not dispute those facts.

It is undisputed that Ms. Buckner's job duties included interacting with others and that there were several indications that she was not doing so appropriately. For example, Ms. Richard received complaints from both Ms. Buckner's co-workers and the agency's clients about Ms. Buckner's behaviors and Ms. Richard observed Ms. Buckner being argumentative with co-workers and clients. The fitness-for-duty examinations which the agency scheduled and which Ms. Buckner voluntarily attended were related to Ms. Buckner's job and were consistent with the

11

agency's business necessity of providing a conflict-free workplace for its employees and to provide its clients with proper and timely resolution of the clients' problems. The examinations served the agency's legitimate business purpose of determining whether Ms. Buckner was fit to perform her job duties which included interacting with others and providing agency clients with timely advice.

This Court concludes that Defendants did not violate the ADA with respect to Ms. Buckner by requiring her to attend fitness-for-duty examinations.

The Court turns to Ms. Buckner's claim that Defendants violated her rights under the ADA when they failed to return her to work on June 18, 2008. Ms. Buckner's position seems to be that Defendants failed to return her to work after they received Dr. Gamm's report and that they failed to return her to work because she has a mental disability.

A plaintiff may prove that she was discriminated against based upon her disability through direct or indirect evidence. *Monette v. Elec. Data Sys. Corp.,* 90 F.3d 1173, 1178 (6th Cir. 1996). Where a plaintiff presents direct evidence of disability discrimination, the plaintiff bears the burden of establishing that (1) she is disabled and (2) she is "otherwise qualified" for the position despite her disability without accommodation from the employer, or with an alleged "essential" job requirement eliminated, or with a proposed reasonable accommodation. *Hedrick v. Western Reserve Care Sys.,* 355 F.3d 444. 453 (6th Cir. 2004)(citation omitted). The employer will then bear the burden of proving that a challenged job criterion is essential, and therefore a business necessity, of that a proposed accommodation will impose an undue hardship upon the employer. *Id.*

Where a plaintiff seeks to establish discrimination through indirect evidence, courts

12

employ the *McDonnell Douglas Corp. v. Green,* 411 U.S. 792 (1973), burden-shirting approach. *Id.* To establish a *prima facie* case under the ADA, a plaintiff must show that (1) she is disabled; (2) she is otherwise qualified for the job with or without reasonable accommodation; (3) she suffered an adverse employment decision; (4) the employer knew or had reason to know of her disability; and (5) after rejection or termination the position remained opened or the disabled individual was replaced by a non-disabled individual. *Gecewicz v. Henry Ford Macomb Hosp. Corp.,* 683 F.3d 316, 321 (6th Cir. 2012); *DiCarlo v. Potter,* 358 F.3d 408, 419 (6th Cir. 2004). If the plaintiff establishes a *prima facie* case of discrimination under the ADA, the burden then shifts to the defendant to set forth a legitimate, nondiscriminatory reason for the adverse employment action. *Hendrick,* 355 F.3d at 453 (citation omitted). If the defendant satisfies this burden of production, the plaintiff must introduce evidence showing that the proffered explanation is pretextual. *Id.* Under this scheme, the plaintiff retains the ultimate burden of persuasion at all times. *Id.*

As noted, Ms. Buckner's claim is that Defendants impermissibly discriminated against her on the basis of her disability when they failed to return her to work on June 18, 2008. For purposes of the present Motion, the Court will assume that Ms. Buckner has a disability within the meaning of the ADA.

It is not entirely clear whether Ms. Buckner's *pro se* ADA claim is based on direct or indirect evidence. However, regardless of whether the direct or indirect test is used, Ms. Buckner's claim fails.

Defendants' position is that they did not return Ms. Buckner to work on June 18, 2008, because Dr. Sack, the fitness-for-duty examiner, determined that she was not fit for duty. While

13

Dr. Sack's report is not properly before the Court, what is properly before the Court is Defendants' explanation as to why they concluded Ms. Buckner was not otherwise qualified for the job of Economic Support Specialist and Ms. Buckner does not dispute Defendants' argument. However, Ms. Buckner does argue that she was otherwise qualified for the job with a reasonable accommodation. Her position seems to be that as a reasonable accommodation, Defendants should have continued her leave-with-pay status until she was medically cleared to return to work. This argument fails.

As noted *supra,* the agency placed Ms. Buckner on a paid leave of absence on April 11, 2008, and continued that paid leave status until June 23, 2008. The agency had advised Ms. Buckner that when her paid leave of absence ended, she could participate in the leave-sharing program and use any of her available leave time to cover her absences and that when she had exhausted all available leave, the agency would place her on a medical leave of absence without pay.  Subsequently, Ms. Buckner received one hundred twelve hours of donated leave time and used all of her available paid leave. Ms. Buckner exhausted her paid time on about August 12, 2008.[5]

A plaintiff bears the burden of establishing that the accommodation he or she seeks is reasonable. *Monette*, 90 F.3d at 1187. There is no authority for the proposition that as a reasonable accommodation for an employee's disability, an employer is required to allow an employee to take a leave of absence for an indefinite period. *Walsh v. United Parcel Service,* 201 F.3d 718, 727 (6th Cir. 2000)(citations omitted). Surely, then, if the ADA does not require as a reasonable accommodation that an employer allow an employee to take a leave of absence for an indefinite

---

[5] However, before Ms. Buckner had even exhausted her paid time off, she applied for disability benefits from OPERS and provided Defendants with a note from her private physician stating that she would not return to work.

14

period, it does not require an employer to place an employee on a *paid* leave of absence for an indefinite period.

Ms. Buckner has failed to counter Defendants' position that she was not fit for duty and therefore not qualified for the job as Economic Support Specialist with the agency. In addition, Ms. Buckner has failed to establish that she was qualified for the job with a reasonable accommodation. Accordingly, Ms. Buckner's ADA claim fails whether based on direct or indirect evidence.

Because the essential elements of an ADA claim and a claim under the Ohio handicap discrimination statutes are identical, the analysis of Ms. Buckner's ADA claim also resolves her state law claim. *Hendrick v. Western Reserve Care System,* 355 F.3d 444, 452 (6th Cir. 2004), *cert. denied,* 543 U.S. 817 (2004)(citations omitted); *Columbus Civ. Serv. Comm. v. McGlone,* 82 Ohio St.3d 569, 572-73 (1998). Because Ms. Buckner's ADA claims fail, her Ohio handicap discrimination claims fail as well.

At this juncture, based on the various arguments Ms. Buckner has raised in her opposition to Defendants' present motion, the Court makes several observations

First, the Court previously denied Defendants' Motion to Dismiss pursuant to Fed.R.Civ.P. 12(b)(6). (Doc. 37). Of course, the legal standard applicable to a motion to dismiss and the legal standard applicable to a motion for summary judgment are decidedly different. A motion to dismiss under Fed.R.Civ.P. 12(b)(6) is designed to test the sufficiency of the complaint, *Riverview Health Institute LLC v. Medical Mutual of Ohio,* 601 F.3d 505, 512 (6th Cir. 2010), and "all well-pled facts in the complaint must be accepted as true." *Savoie v. Martin,* 673 F.3d 488, 492 (6th Cir. 2012), citing, *Courie v. Alcoa Wheel & Forged Prods.,* 577 F.3d 625, 629 (6th Cir. 2009),

citing *Ashcraft v. Iqbal,* 556 U.S. 662, 677-78 (2009). In contrast, and as noted above, summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine dispute as to any *material* fact and the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56 (emphasis supplied)[6]. In other words, the court goes beyond the complaint and considers the proper Rule 56 evidence submitted by the parties.

Second, an EEOC probable cause determination is to be distinguished from an EEOC letter of violation which suggests that preliminarily there is reason to believe that a violation has taken place. *Williams v. Nashville Network,* 132 F.3d 1123, 1129 (6th Cir. 1997)(citation omitted). A probable cause determination, on the other hand, is more tentative in its conclusions. *Id.* Nevertheless, a district court is not bound by an EEOC determination. *Dorn v. General Motors,* 131 Fed. App'x. 462, 471 (6th Cir.), *cert. denied,* 546 U.S. 937 (2005)(citations omitted).

Third, the requirement that a court should liberally construe claims brought by *pro se* litigants does not prohibit the court from entering summary judgment against them. *Cf., Maston v. Montgomery County Jail Medical Staff Personnel,* 832 F.Supp.2d 846, 849 (S.D.Ohio 2011)(citation omitted).

Fourth, the Court previously rejected Ms. Buckner's argument that the Court should exclude Mr. Dezarn as a witness because Defendants failed to disclose he is a licensed attorney who previously practiced as an assistant county prosecutor. Decision and Order, Doc. 89, PageID 1978-79 (Nov. 19, 2012). Ms. Buckner has raised that argument again and the Court again rejects it for the same reasons given in the November 19, 2012, Decision.

---

[6] For example, for purposes of Ms. Buckner's ADA and Ohio state law claims, a material fact is that Ms. Buckner sustained a burn injury. In this case, whether that injury was to her left leg and foot or her right leg and foot is not a *material* fact.

16

Fifth, the Court also previously rejected Ms. Buckner's argument that the Court should exclude Ms. Richard's affidavit on the basis it is not properly authenticated. *Id.,* PageID 1979. Ms. Buckner has raised that argument again and the Court again rejects it for the same reasons given in the November 19, 2012, Decision.

The Motion of Defendants Montgomery County Jobs and Family Services and Board of County Commissioners of Montgomery County, Ohio for Summary Judgment, Doc. 85, is GRANTED. The clerk shall enter judgment in favor of Defendants and against Plaintiff Lisa Buckner dismissing the Complaint with prejudice.

December 5, 2012                                                   s/ *Michael R. Merz*
                                                                              United States Magistrate Judge